UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| In re:   Case No. A03-00992-DMD<br><br>KATMAI PRO SHOP, INC., an Alaska Corporation,<br><br>            Debtor. | Chapter 7<br><br>**Filed On 5/10/06** |
| KENNETH W. BATTLEY<br><br>            Plaintiff,<br><br>v.<br><br>CRAIG SCHWEITZER<br><br>            Defendant. | Adversary Case No. 04-90026-DMD |

## REPORT AND RECOMMENDATION
## TO THE UNITED STATES DISTRICT COURT

After trial of this matter on April 13, 2006, the bankruptcy court, in accordance with 28 U.S.C. § 157(c)(1), hereby submits its proposed findings of fact and conclusions of law to the United States District Court for entry of a final order and judgment. The bankruptcy court recommends entry of an order and judgment in favor of the defendant, dismissing the plaintiff's complaint with prejudice, with each party to bear their own costs and attorney's fees.

I.   Proposed Findings of Fact

1. Katmai Pro Shop, Inc. ("KPS"), and defendant Craig Schweitzer entered an aircraft lease/purchase agreement on April 22, 2003, regarding a 1953 DeHavilland Beaver floatplane.

2. All payments on the lease/purchase agreement were to be made to Key Bank. Key Bank held a perfected security interest in the Beaver.

3. Schwietzer took possession of the plane on April 23, 2003. He painted the airplane in May of 2003. He put 300 hours on the aircraft during the summer of 2003. The motor was "timed out" and, in accordance with the lease/purchase agreement, it was to be replaced at Schweitzer's expense by September of 2003.

4. KPS filed for chapter 11 relief on September 5, 2003.

5. Schweitzer removed the motor from the Beaver in September of 2003.

6. On September 23, 2003, Key Bank sought relief from the automatic stay in bankruptcy court. Schweitzer and KPS opposed Key Bank's motion.

7. In October, 2003, KPS moved to assume the lease/purchase agreement with Schweitzer. No ruling was made on this motion.

8. Schweitzer disassembled the Beaver over the winter of 2003-2004.

9. At the time Schweitzer took possession of the plane, he received all the log books that were in possession of KPS or Darrell Lowell. Lowell served as director of maintenance for both KPS and Schweitzer's company, Maverick Air.

10. On December 9, 2003, Schweitzer demanded additional log books from KPS.

2

He claims the Beaver was worth 15 to 20% less than the purchase price specified in the lease/purchase agreement because certain log books were missing.

11. On December 10, 2003, Schwietzer defaulted on the payment of $5,600.00 to KPS and KeyBank pursuant to the lease/purchase agreement.

12. KPS moved to reject the lease/purchase agreement in February, 2004.

13. KeyBank's motion for relief from stay and KPS's motion to reject the lease/purchase agreement came before the court for hearing on March 12, 2004. At the time of the hearing KeyBank was owed over $275,000.00, together with accruing interest, fees and costs. Key Bank's motion for relief from stay was granted and the lease/purchase agreement was rejected by order entered March 15, 2004.

14. On April 2, 2004, Schweitzer placed the parts and components of the Beaver in the snow outside his Kenai hanger.

15. Employees of Alaska Aircraft Sales, Inc., picked up the Beaver parts and components and transported them to Anchorage for assembly on April 6, 2004. KeyBank paid Alaska Aircraft Sales $84,473.42 to reassemble the Beaver and give it an annual for 2004. KeyBank sold the Beaver for $245,000.00 in 2005.

16. On May 18, 2004, while this bankruptcy case was still in chapter 11, KPS filed an adversary complaint seeking to recover damages for Schweitzer's breach of the lease/purchase agreement.

17. On April 20, 2005, KPS's bankruptcy was converted from a chapter 11 proceeding to one under chapter 7. Kenneth Battley was duly appointed chapter 7 trustee for the bankruptcy estate. Battley substituted in as plaintiff in this adversary proceeding.

II. Conclusions of Law

1. The trustee asserts claims for breach of contract, breach of the covenant of good faith and fair dealing, conversion, trespass to chattel, negligence and punitive damages. Because these counts do not depend on the Bankruptcy Code for their existence and could proceed in another court, they are "non-core" proceedings. *Sec. Farms Int'l v. Int'l Bhd. of Teamsters*, 124 F.3d 999, 1008 (9th Cir. 1997), *citing In re Castlerock Properties*, 781 F.2d 159, 162 (9th Cir. 1986).

2. The bankruptcy court has "related to" jurisdiction over the trustee's claims. *Montana v. Goldin (In re Pegasus Gold Corp.),* 394 F.3d 1189, 1193-94 (9th Cir. 2005); *Dunmore v. United States,* 358 F.3d 1107, 1113-14 (9th Cir. 2004).

3. Schweitzer has raised a bankruptcy law defense to the trustee's claims based on KPS's rejection of the lease/purchase agreement. The issue of whether the lease/purchase agreement is an asset of the estate turns upon an interpretation of the Bankruptcy Code and constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). *Dunmore,* 358 F.3d at 1114-15.

4. The bankruptcy court may hear, determine and enter final judgments in core proceedings. 28 U.S.C. § 157(b)(1); *Dunmore*, 358 F.3d at 1114.

5. The bankruptcy court may hear non-core, related proceedings and submit proposed findings of fact and conclusions of law to the district court for *de novo* review. 28 U.S.C. § 157(c)(1); *Dunmore*, 358 F.3d at 1114.

6. To avoid the jurisdictional quagmire presented by adjudicating core and non-core counts in separate courts, the bankruptcy court will submit proposed findings of fact and conclusions of law to the district court on all issues. *See, e.g., Dunmore*, 358 F.3d at 1114.

7. The lease/purchase agreement was an executory contract. KPS's rejection of the lease/purchase agreement prevented that contract from becoming an asset of the bankruptcy estate.

> Because executory contracts and leases involve future liabilities as well as rights, . . . an affirmative act of assumption by the trustee is required to bring the property into the estate in order to ensure that the estate is not charged with the liabilities except upon due deliberation. Thus, executory contracts and leases – unlike all other assets – do not vest in the trustee as of the date of the filing of the bankruptcy petition. They vest only upon the trustee's timely and affirmative act of assumption.
>
> Because rejection of an executory contract is retroactive to the date of the filing of the petition, such a contract never becomes a part of the bankruptcy estate . . . .

*Cheadle v. Appleatchee Riders Ass'n (In re Lovitt),* 757 F.2d 1035, 1041 (9th Cir. 1985) (citations omitted).

8. Once the lease/purchase agreement was rejected, the trustee no longer had any right, title or interest in that contract. *Id.*; *see also* Michael T. Andrew, *Executory Contracts in Bankruptcy: Understanding 'Rejection,'* 59 U. Colo. L. Rev. 845, 862-64 (Fall 1988).

9. Once the lease/purchase agreement was rejected, plaintiff Kenneth Battley, the chapter 7 trustee, had no standing to assert a claim for post-petition breaches of this contract. The trustee's breach of contract claim should therefore be dismissed, with prejudice.

10. In Alaska, breach of the implied covenant of good faith and fair dealing sounds primarily in contract. *Muni. of Anchorage v. Gentile,* 922 P.2d 248, 260 (Alaska 1996). Breach of this covenant is a tort only if it arises in the surety or insurance context. *Id.*

11. The lease/purchase agreement is not a surety or insurance contract. Accordingly, the trustee's claim for breach of the implied covenant of good faith and fair dealing is a contract claim. The trustee has no standing to assert breach of an implied covenant arising from the lease/purchase agreement, because the agreement was rejected and did not become an asset of the bankruptcy estate. This claim should be dismissed, with prejudice.

12. The trustee's third claim for relief seeks damages for the conversion of certain unspecified "parts and materials related to the Beaver." Assuming the trustee has standing to assert this tort claim, notwithstanding the rejection of the lease/purchase agreement, he has failed to provide evidence clearly delineating which parts or materials were missing from the Beaver. Additionally, conversion is an intentional tort, which requires a finding that the defendant intentionally interfered with the plaintiff's possession of the property. *K & K*

6

*Recycling, Inc. v. Alaska Gold Co.*, 80 P.3d 702, 717 (Alaska 2003). There is no evidence to support this finding. This claim should be dismissed, with prejudice, due to the lack of evidence regarding the alleged conversion and resulting damages.

13. The trustee's fourth claim for relief alleges a trespass to chattel for "failing to maintain the aircraft and removing parts without providing replacement parts or keeping adequate documentation." Again assuming that the trustee has standing to assert this tort claim, notwithstanding the rejection of the lease/purchase agreement, he has failed to establish with any specificity which parts were removed from the aircraft and not replaced. Like conversion, a trespass to chattels is an intentional tort that arises "when a party intentionally dispossesses another of the chattel or intentionally uses or interferes with a chattel in another's possession." *Id.*, at 717 n.26, *citing* RESTATEMENT (SECOND) OF TORTS § 217 (1965). No evidence was produced to support a finding that a trespass had been committed here. This claim should also be dismissed, with prejudice.

14. The trustee's fourth count also alleges claims for failing to maintain the aircraft and to keep "adequate documentation." These are contract claims, not encompassed within the tort claims for conversion or trespass to chattels. These contract claims fail because the lease/purchase agreement was rejected and did not become an asset of the bankruptcy estate. They should be dismissed, with prejudice.

15. Count five of the complaint alleges negligence "with respect to documentation of maintenance work on the Beaver." Assuming the trustee has standing to assert a claim for negligence, notwithstanding the rejection of the lease/purchase agreement, he has failed to

7

introduce evidence on the issues of liability and damages in support of this claim. Count five should be dismissed, with prejudice.

16.  Count six of the complaint seeks punitive damages from Mr. Schweitzer. Inasmuch as the trustee has failed to establish damages for any of the state law claims asserted in the complaint, his punitive damage claim must also fail. It should be dismissed, with prejudice.

17.  The dispositive issues in this case turned on an interpretation of federal bankruptcy law rather than state law. Because federal law controlled, attorney's fees under Ak. R. Civ. P. 82 are not warranted. *Am. Express Travel Related Serv. Co., Inc., v. Hashemi (In re Hashemi)*, 104 F.3d 1122, 1126-27 (9th Cir. 1996). Each party shall bear their own attorney's fees and costs.

/ / / /

/ / / /

/ / / /

DATED: May 10, 2006.

                                                                BY THE COURT

                                          /s/ Donald MacDonald IV
                                          DONALD MacDONALD IV
                                          United States Bankruptcy Judge

Serve:  W. Artus, Esq.
          E. LeRoy, Esq.
          P. Gingras, Adv. Case Mgr.

05/10/06

9